1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT

8            EASTERN DISTRICT OF CALIFORNIA

9

10

TIMOTHY BERTRAM,                ) 1:12-cv—00058-SKO-HC
11                              )
            Petitioner,         ) ORDER DISMISSING THE PETITION
12                              ) WITHOUT LEAVE TO AMEND (DOC. 1)
                                )
13      v.                      ) ORDER DECLINING TO ISSUE A
                                ) CERTIFICATE OF APPEALABILITY AND
14  Warden, CCI Tehachapi,      ) DIRECTING THE CLERK TO CLOSE THE
                                ) ACTION
15          Respondent.         )
                                ) ORDER DIRECTING THE CLERK TO SEND
16  _____) TO PETITIONER A CIVIL RIGHTS
                                  COMPLAINT FORM
17

18      Petitioner is a state prisoner proceeding pro se and in

19  forma pauperis with a petition for writ of habeas corpus pursuant

20  to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1),

21  Petitioner has consented to the jurisdiction of the United States

22  Magistrate Judge to conduct all further proceedings in the case,

23  including the entry of final judgment, by manifesting consent in

24  a signed writing filed by Petitioner on January 23, 2012 (doc.

25  5).  Pending before the Court is the petition, which was filed on

26  January 12, 2012.

27      I.  Screening the Petition

28      Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v.
Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d
1484, 1499 (9th Cir. 1997).

Rule 4 of the Rules Governing § 2254 Cases in the United
States District Courts (Habeas Rules) requires the Court to make
a preliminary review of each petition for writ of habeas corpus.
The Court must summarily dismiss a petition "[i]f it plainly
appears from the petition and any attached exhibits that the
petitioner is not entitled to relief in the district court...."
Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir.
1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir.
1990).  Habeas Rule 2(c) requires that a petition 1) specify all
grounds of relief available to the Petitioner; 2) state the facts
supporting each ground; and 3) state the relief requested.
Notice pleading is not sufficient; rather, the petition must
state facts that point to a real possibility of constitutional
error.  Rule 4, Advisory Committee Notes, 1976 Adoption;
O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v.
Allison, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition
that are vague, conclusory, or palpably incredible are subject to
summary dismissal.  Hendricks v. Vasquez, 908 F.2d 490, 491 (9th
Cir. 1990).

Further, the Court may dismiss a petition for writ of habeas
corpus either on its own motion under Habeas Rule 4, pursuant to
the respondent's motion to dismiss, or after an answer to the
petition has been filed.  Advisory Committee Notes to Habeas Rule
8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43

1  (9th Cir. 2001).

2      A petition for habeas corpus should not be dismissed without

3  leave to amend unless it appears that no tenable claim for relief

4  can be pleaded were such leave granted.  Jarvis v. Nelson, 440

5  F.2d 13, 14 (9th Cir. 1971).

6      Here, Petitioner alleges that while incarcerated at the

7  California Correctional Institution (CCI) at Tehachapi,

8  California, he was assessed a loss of 270 days of credit and was

9  assigned to be housed in the secured housing unit (SHU) for

10  fifteen months as a result of a disciplinary finding that

11  Petitioner battered a fellow inmate on July 4, 2009, and caused

12  serious injury.  Petitioner alleges that various procedures

13  employed by the prison staff violated state regulations and his

14  right to due process of law.  In support of the petition,

15  Petitioner submitted documentation of the disciplinary process,

16  his administrative appeals, and portions of the proceedings in

17  which he appears to have exhausted his state judicial remedies

18  with respect to the claims raised in the petition.

19      Petitioner seeks to have the disciplinary findings reversed,

20  his credit restored, and all prison staff held accountable for

21  their actions.

22      II.  Failure to Name a Proper Respondent

23      Petitioner alleges that he is an inmate of the California

24  Men's Colony East at San Luis Obispo, California (CMC).  (Pet.

25  1.)  However, Petitioner names as the Respondent in this

26  proceeding the warden at the California Correctional Institution

27  at Tehachapi, California (CCI).

28      Title 28 U.S.C. § 2242 provides that a petition for writ of

3

habeas corpus shall allege the name of the person who has custody over the applicant.  Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules) provides that if the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.  A failure to name the proper respondent destroys personal jurisdiction.  <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement.  <u>Johnson v. Reilly</u>, 349 F.3d 1149, 1153 (9th Cir. 2003).

Although a petitioner may be given leave to file an amended petition naming a proper respondent, in this instance the petition suffers from additional defects which cannot be cured. Accordingly, the Court notes the defect but proceeds to consider the additional defects in the petition which cannot be cured.

III.  <u>Conditions of Confinement</u>

Petitioner contends that various correctional officers delayed in responding, or in failing to respond, to his request for a "bunk move," which in turn precipitated an incident during which Petitioner was found to have hit a fellow inmate in the face with his fist and to have caused a wound requiring nine (9) sutures.  (Pet. 3)

Petitioner complains that the prison employees were unprofessional, acted without regard to their training, instigated the incident, and did nothing to prevent it, all in violation of Cal. Code Regs., tit. 15, §§ 3286, 3395, 3270-71,

4

and 3391.[1]   (Id. at 10.)   Petitioner also complains that specified officers threatened that they would make Petitioner's life a living hell and would make sure he had problems until he paroled; further, Petitioner was threatened with being sent from his special needs yard (SNY) to mainline housing, which would have resulted in Petitioner's being stabbed by other inmates. (Id. at 8-9.)   Petitioner alleges that the dorm where he was housed at the time of the incident was overcrowded to the point of dangerousness; Petitioner was being bullied and harassed by a group of Hispanic inmates allegedly due to a deformity (blindness in his right eye, which also wanders over to the side), and when he asked for help from prison officials, no help was given.   (Id. at 8.)   Petitioner alleges that these actions violated his right to due process of law.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   A habeas corpus petition is the correct method for a prisoner to challenge the legality or duration of his confinement.   Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)(quoting Preiser v. Rodriquez, 411 U.S. 475, 485 (1973)); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases, 1976 Adoption.

In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement.   McCarthy v. Bronson, 500 U.S.

---

[1] Unless otherwise indicated, all references to regulations are to provisions in title 15 of the California Code of Regulations.

136, 141-42 (1991); <u>Preiser</u>, 411 U.S. at 499; <u>Badea</u>, 931 F.2d at 574; Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases, 1976 Adoption.

The claims specified above concern Petitioner's conditions of confinement.  Thus, Petitioner is not entitled to habeas corpus relief with respect to such allegations, and the petition must be dismissed.

Should Petitioner wish to pursue these claims, he must do so by way of a civil rights complaint pursuant to 42 U.S.C. § 1983. The Clerk will be directed to send an appropriate complaint form to Petitioner.

IV.  <u>State Law Claims</u>

Petitioner complains that prison staff violated specific regulations governing prison disciplinary proceedings by empowering a group of hispanic inmates to have control over Petitioner in violation of Cal. Code Regs., tit. 15, § 3022; finding that he committed a battery causing serious injury in violation of § 3323(b)(3), whereas a preponderance of the evidence supported only a finding of fighting in violation of § 3323(f)(10); and failing to assign a staff assistant pursuant to §§ 3315(d)(2) and 3318(b)(2)(A).

He also complains that the initial supervisor's review of the rules violation report (RVR) occurred on July 12, 2009, whereas the RVR itself was not written until July 13, 2009; thus, the supervisor's review was an empty ritual.  (Pet. 6:1-9.)

Petitioner complains that pursuant to §§ 3315(d) and 3318(a), he was entitled to an investigative employee (IE) to whom Petitioner assented; however, Officer Hernandez was assigned

and agreed to by Petitioner, but Officer T. Clark wrote the IE report, an allegedly illegal procedure to which Petitioner did not consent. (Id. at 7.)

Petitioner alleges that the senior hearing officer (SHO) who conducted the disciplinary hearing was not experienced in RVR hearings as required by § 3310(d). (Id. at 10.) He alleges that the senior hearing officer's failure to allow witnesses he requested to be present at the hearing, including the reporting employee, violated his rights under § 3315(e). (Pet. 7.) Petitioner further alleges that pursuant to § 3320(l), he had a right to present documentary evidence at his hearing, which was denied. Finally, Petitioner alleges that he has been diagnosed with mental illness, a mitigating circumstance that was totally disregarded in violation of § 3317. (Id. at 8.) He further alleges a complete disregard of mitigating circumstances as provided in § 3341.5(c)(10)(a)(1)-(5).

As Petitioner rests these claims on state law, the Court reiterates that federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). The Court accepts a state court's

7

interpretation of state law.  <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions.  <u>Murtishaw v. Woodford</u>, 255 F.3d 926, 964 (9th Cir. 2001).

Claims that are based solely on state law are not cognizable in this proceeding.  Thus, to the extent that the claims specified above are based solely on state law, they must be dismissed because they are not cognizable in a proceeding brought pursuant to 28 U.S.C. § 2254.

V.   <u>Due Process Claims</u>

Petitioner raises numerous claims that his right to due process of law was violated in connection with the disciplinary hearing.

A.   <u>Background</u>

The RVR written by Correctional Officer R. Stanley was dated July 13, 2009.  It detailed Officer Stanley's report that on July 4, 2009, he and Officer A. Edgar were conducting a security check when inmate Garcia approached and reported that Petitioner had just assaulted Garcia's "bunkie," whom officers observed to be bleeding from his left eye.  Petitioner was escorted out and did not display unusual behavior; further, he spoke and understood English.  (<u>Id.</u> at 30.)  Petitioner received a copy of the report before the hearing on July 16, 2009.  (<u>Id.</u>)  Petitioner was not assigned a staff assistant because he did not meet the criteria; Officer Hernandez was assigned as his IE, and Petitioner agreed

8

to his assignment.  (Id.)  Petitioner did not request evidence or information at that time but did request that the reporting employee (Officer Stanley) be present at the hearing as well as Officers Pike, Butler, and Espinoza, and inmate Heathman from dormitory 6.  (Id.)

In the IE's report, it was noted that Petitioner had received all pertinent supplemental reports and was not part of the Mental Health Services Delivery System at the "CCCMC EOP" level of care; he understood the assignment of the IE and gave reasonable and specific responses during their dialogue.  (Id. at 32.)  Officer Clark further advised Petitioner that he had been assigned as the IE, and Petitioner had no objection and was interviewed.  (Id.)  Petitioner did not request the presence of the reporting employee or the IE at the hearing.  Officer Stanley was interviewed, and as reporting employee he related that inmate Garcia had approached him and stated that Petitioner had just assaulted his bunkie.  Officer Edgar made no statement.  (Id.)  Inmate Garcia provided a written statement detailing Petitioner's calling inmate Sigala names, pushing two lockers onto inmate Garcia's bunk, and approaching inmate Sigala, saying, "You got a problem?"  When Sigala began to speak, Petitioner struck Sigala in the face with a closed fist.  Sigala did not provoke a fight, resist it, or fight back.  Garcia then reported the matter to Officers Stanley and Edgar.  (Id. at 33.)

Officer Clark reported that during the week of June 8, 2009, Petitioner had asked him if he could help Petitioner move out of the dorm because he was not getting along with inmate Brown; Clark later observed that Petitioner had arguments and

confrontations with other inmates. (Id. at 33.) Clark spoke to Officer Pike about Petitioner's request for a dorm change due to some problems with a few inmates, and Officer Pike said he would speak with Petitioner. (Id.)

The portion of the RVR addressed to the hearing reflects that the SHO, Correctional Lieutenant M. Dailo, reported that Petitioner stated that he had no physical or mental disorder that would delay the hearing or reduce his chance of presenting a defense. Effective communication was established, Petitioner did not require a staff assistant, Petitioner understood and spoke English and was literate, and the issues were not complex. (Id. at 34.) Petitioner acknowledged having received the RVR and the crime and incident report at least twenty-four (24) hours in advance of the hearing, and he was ready to proceed. (Id.)

Petitioner stated that he had tried to avoid the conflict by asking for a bed move. (Pet. at 35.) When inmate Sigala slammed his locker, Petitioner confronted him about it, thought that Sigala was going to hit him, and hit him first for self-defense and then ran away. (Id.)

With respect to witnesses, although Petitioner had requested the reporting employee as a witness, Petitioner stated during the hearing that he had no questions for him; thus, the SHO did not require the RE to be present. Petitioner wanted to ask Officers Pike, Butler, and Espinoza, and Inmate Heathman to verify that Petitioner did ask for a bed move. The SHO decided not to call any witnesses as Petitioner did not have any other questions pertaining to the RVR. The SHO stated, "This SHO infers that he indeed ask (sic) to be moved." Id. at 35. The incident report

10

included information concerning inmate Sigala's need for sutures.

The SHO concluded that Petitioner had committed battery, the willful, non-accidental, and unlawful use of force or violence upon the person of another, which caused serious injury, which included a wound requiring suturing. (Id. at 35.)  The SHO relied on the RVR of Officer Stanley, the inmate witness statement of Garcia, the crime/incident report reflecting the laceration and sutures, Petitioner's own testimony that he hit Sigala, and Petitioner's statement reported in the crime/incident report that he thought Sigala was going to hit him, so Petitioner hit Sigala in the face. (Id. at 36.)  The SHO considered Petitioner's asking for a bed move as a mitigating factor, but he concluded that Petitioner chose to resort to violence and inflicted serious injuries. (Id.)  Petitioner was, therefore, assessed a loss of 270 days of credit and was referred to the classification committee for SHU placement. (Id.)  Petitioner was assessed a fifteen-month SHU term. (Id. at 62.)

The petition includes a typed, unsigned, unverified, undated statement in which Petitioner claims he told the SHO he had several questions for all three officers, but the SHO said the officers had gone home and would not be present, and that it did not matter why they were not present because Petitioner was guilty. (Id. at 63.)  The SHO did not record Petitioner's statement that he had several questions for the officers. (Id.)

B.  Legal Standards

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

11

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption or correctness by clear and convincing evidence.

The Petitioner bears the burden of establishing that the decision of the state court was contrary to, or involved unreasonable application of, the precedents of the United States Supreme Court. Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Baylor v.Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).

Procedural due process of law requires that where the state has made good time credits subject to forfeiture only for serious misbehavior, prisoners subject to a loss of good time credits must be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact as to the evidence relied upon and the reasons for disciplinary action taken. Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974). Confrontation, cross-examination, and counsel are not required. Wolff, 418 U.S. at 568-70.

Further, where good time credits are a protected liberty

interest, the decision to revoke credits must be supported by some evidence in the record.  <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985).  The Court in <u>Hill</u> stated:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." <u>United States ex rel. Vajtauer v. Commissioner of Immigration</u>, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. <u>See ibid.; United States ex rel. Tisi v. Tod</u>, 264 U.S. 131, 133-134, 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); <u>Willis v. Ciccone</u>, 506 F.2d 1011, 1018 (CA8 1974).

<u>Superintendent v. Hill</u>, 472 U.S. at 455-56.  The Constitution does not require that the evidence logically preclude any conclusion other than the conclusion reached by the disciplinary board; there need only be some evidence in order to ensure that there was some basis in fact for the decision.  <u>Superintendent v. Hill</u>, 472 U.S. at 457.

C.   <u>Some Evidence</u>

Petitioner alleges that there was an absence of a preponderance of evidence to support the disciplinary finding and the particular punishment assigned in light of the classification set forth in §§ 3323(b)(3), 3323(f)(10).  (Pet. 6:11-21.)  He alleges that the finding was supported by the testimony of a single witness, inmate Garcia, who was severely prejudiced against Petitioner; further, there were cameras within the dorm which recorded the entire incident, but the tape was not produced.  (<u>Id.</u> at 6-7.)  He alleges that the victim, inmate

1  Sigala, admitted that words were being exchanged between Sigala
2  and Petitioner.  (Id. at 8.)

3      With respect to the requirement that some evidence support
4  the finding that Petitioner committed the battery upon a fellow
5  inmate, this Court does not make its own assessment of the
6  credibility of witnesses or re-weigh the evidence.  The Court
7  must, however, ascertain that the evidence has some indicia of
8  reliability and, even if meager, "not so devoid of evidence that
9  the findings of the disciplinary board were without support or
10  otherwise arbitrary."  Cato v. Rushen, 824 F.2d 703, 704-05 (9th
11  Cir. 1987) (quoting Superintendent v. Hill, 472 U.S. 445, 457
12  (1985)).

13      In Cato v. Rushen, 824 F.2d at 705, the Court found that the
14  Hill standard was not satisfied where the only evidence
15  implicating the inmate was another inmate's statement that was
16  related to prison officials through a confidential informant who
17  had no first-hand knowledge of any relevant statements or actions
18  by the inmate being disciplined and whose polygraph results were
19  inconclusive.  In contrast, evidence evaluated and found to
20  constitute "some evidence" supportive of various findings
21  includes the report of a prison guard who saw several inmates
22  fleeing an area after an assault on another inmate when no other
23  inmates were in the area, Superintendent v. Hill, 472 U.S. 456-
24  57; the statement of a guard that the inmate had admitted a theft
25  to supplement his income, coupled with corroborating evidence,
26  Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989); an
27  inmate's admission and corroborating, circumstantial evidence,
28  Crane v. Evans, 2009 WL 148273, *3 (N.D.Cal. Feb. 2, 2009); and

14

an inmate's admission of having engaged in the violation plus an officer's report of having heard a recording of the offending conversation, Dawson v. Norwood, 2010 WL 761226, *1 (C.D.Cal. March 1, 2010).

Here, Petitioner's own statements as well as the statements of inmate Garcia, an eyewitness, and the reports of the extent of Sigala's injuries constitute some evidence in support of the finding. Thus, Petitioner has not alleged facts that would entitle him to relief on this claim.

The Court concludes that this claim must be dismissed.

D. Staff Assistant, Investigative Employee, and Rank of the Officer Reviewing Petitioner's Appeal

Petitioner alleges that he was denied a right to a staff assistant created by §§ 3315(d)(2) and 3318(b)(2)(A). (Id. at 6.) Petitioner further alleges that his due process rights were violated when pursuant to §§ 3315(d) and 3318(a), Officer Hernandez was assigned as the IE and was agreed to by Petitioner, but Officer T. Clark wrote the IE report, an allegedly illegal procedure to which Petitioner did not consent. (Id. at 7.) Finally, Petitioner alleges that his administrative appeal of the disciplinary finding of the SHO, who was a lieutenant, was reviewed by a sergeant, which is a violation of due process because only another lieutenant or captain or higher had the authority to give relief. (Id. at 9.) Thus, his administrative appeal could only be denied. (Id.)

The Court notes that the documentation submitted by Petitioner shows that Petitioner consented to Officer Clark's participation with respect to the IE report. In any event, as is

set forth in the previous statement of the minimal requirements

of due process set forth in <u>Superintendent v. Hill</u>, Petitioner

does not have a federal due process right to a staff assistant,

an investigative employee, or to administrative appellate review

by any particular rank of officer.

   Further, Petitioner's allegations with respect to these

three due process sub-claims do not support a finding of a

prejudicial denial of due process.  Petitioner does not dispute

the documentary evidence which reflects that Petitioner was not

illiterate, and the facts of the incident were not complex.  A

habeas petitioner must generally allege facts that show that he

was prejudiced by an alleged constitutional violation.  <u>Wacht v.</u>

<u>Cardwell</u>, 604 F.2d 1245, 1247 (9th Cir. 1979); <u>cf.</u>, <u>Brecht v.</u>

<u>Abrahamson</u>, 507 U.S. 619, 637 (1993) (determining that habeas

relief is warranted when an error resulted in actual prejudice,

or had a substantial and injurious effect or influence in

determining the jury's verdict).  A failure to meet a prison

guideline regarding a disciplinary hearing would not alone

constitute a denial of due process.  <u>See</u>, <u>Bostic v. Carlson</u>, 884

F.2d 1267, 1270 (9th Cir. 1989).  In the absence of controlling

authority, the Court notes that several courts have concluded

that to establish a denial of due process of law, prejudice is

generally required.  <u>See</u>, <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637

(1993); <u>see also</u> <u>Tien v. Sisto</u>, Civ. No. 2:07-cv-02436-VAP (HC),

2010 WL 1236308, at *4 (E.D.Cal. Mar. 26, 2010) ("While neither

the United States Supreme Court or the Ninth Circuit Court of

Appeals has spoken on the issue, numerous federal Courts of

Appeals, as well as courts in this district, have held that a

prisoner must show prejudice to state a habeas claim based on an alleged due process violation in a disciplinary proceeding") (citing Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009); Howard v. United States Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007); Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003); Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992); Poon v. Carey, No. Civ. S-05-0801 JAM EFB P, 2008 WL 5381964, at *5 (E.D.Cal. Dec. 22, 2008); Gonzalez v. Clark, No. 1:07-CV-0220 AWI JMD HC, 2008 WL 4601495, at *4 (E.D.Cal. Oct. 15, 2008)).

Petitioner's generalized allegations of a due process deprivation are unsupported by a statement of specific facts showing a violation that warrants habeas relief.  Petitioner has not shown how the absence of an assistant had any effect on the disciplinary proceedings or the finding resulting from it.  See, James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Petitioner has not shown how the rank of any officer involved in the process has had any prejudicial effect.  Petitioner has not shown a prejudicial denial of due process.  Cf., Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Schenck v. Edwards, 921 F.Supp. 679, 687-88 (E.D.Wash. 1996).

Accordingly, Petitioner has not alleged facts that would entitle him to habeas relief.

Because it does not appear that Petitioner could state a tenable claim for relief, the Court concludes that these claims must be dismissed without leave to amend.

    E.   Denial of Right to Present Witnesses and
         Documentary Evidence

Petitioner alleges that pursuant to § 3315(e) and (e)(5), he

1   requested that the following witnesses be present at the hearing

2   for questioning: R. Stanley, the reporting employee; Officers

3   Pike, Butler, Espinoza; and inmate Heathman. (<u>Id.</u> at 7.)

4   Petitioner alleges that SHO Dailo violated Petitioner's due

5   process rights by denying Petitioner his right to witnesses

6   without an adequate explanation. (<u>Id.</u> at 7-8.)  Petitioner

7   further alleges that his right to present documentary evidence at

8   the hearing was violated by the SHO. (<u>Id.</u> at 9.)

9        To the extent that Petitioner is actually asserting a claim

10  concerning cross-examination and confrontation of witnesses in

11  prison disciplinary hearings, the Court notes that such

12  privileges are not guaranteed as a matter of federal due process

13  of law.  However, an inmate is generally allowed to present

14  witnesses and documentary evidence when to do so does not

15  threaten institutional safety or correctional goals; the decision

16  is left to the sound discretion of the prison officials.  <u>Wolff</u>

17  <u>v. McDonnell</u>, 418 U.S. 539, 566 (1974); <u>Ponte v. Real</u>, 471 U.S.

18  491, 495 (1984).

19       Here, the documentation submitted by Petitioner shows that

20  Petitioner sought the witnesses only to establish that he had

21  requested to be moved before he committed the battery.  Because

22  Petitioner did not have other questions to ask, the SHO exercised

23  his discretion not to call witnesses.  There are no circumstances

24  suggesting that this exercise of discretion was improper or

25  injurious to Petitioner.  From the documentation of the

26  administrative appeal that is attached to the petition, it does

27  not appear that Petitioner alleged or argued in the

28  administrative proceedings that he actually had questions to ask

of the witnesses that pertained to matters other than
establishing that he had asked for a bed move before the
incident.  Although Petitioner states after the fact in an
unsworn document that he had other questions to ask, Petitioner
does not set forth the nature of those questions, and he does not
allege that he informed the SHO regarding the nature of the
questions.  (Pet. 63.)  Further, Petitioner does not state any
specific facts concerning those witnesses, their expected
testimony, or the questions that he would have asked.  Petitioner
has not shown that he suffered any prejudice from the failure to
obtain the testimony of any of the witnesses.

Petitioner succeeded in his attempt to show that he had
sought a bed move before the incident because the documentation
shows that the SHO concluded that Petitioner had done so and
expressly considered the request as a circumstance in mitigation,
which was weighed against Petitioner's wilful commission of the
battery.  (Id. at 36.)  Accordingly, Petitioner cannot show that
any limitation of witnesses was prejudicial.

In summary, the Court concludes that Petitioner has not
alleged facts that would warrant habeas corpus relief.
Petitioner has submitted what appears to be complete
documentation of the disciplinary proceedings.  The documentation
does not support Petitioner's generalized allegations, which are
insufficient to contradict the record, which in turn reflects
facts showing that Petitioner did not suffer a violation of due
process of law.

Because it does not appear that Petitioner could state a
tenable claim for relief if leave to amend were granted, the

1   petition will be dismissed without leave to amend.

2       VI.   Certificate of Appealability

3       Unless a circuit justice or judge issues a certificate of

4   appealability, an appeal may not be taken to the Court of Appeals

5   from the final order in a habeas proceeding in which the

6   detention complained of arises out of process issued by a state

7   court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

8   U.S. 322, 336 (2003).  A certificate of appealability may issue

9   only if the applicant makes a substantial showing of the denial

10  of a constitutional right.  § 2253(c)(2).  Under this standard, a

11  petitioner must show that reasonable jurists could debate whether

12  the petition should have been resolved in a different manner or

13  that the issues presented were adequate to deserve encouragement

14  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336

15  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A

16  certificate should issue if the Petitioner shows that jurists of

17  reason would find it debatable whether the petition states a

18  valid claim of the denial of a constitutional right and that

19  jurists of reason would find it debatable whether the district

20  court was correct in any procedural ruling.  Slack v. McDaniel,

21  529 U.S. 473, 483-84 (2000).

22      In determining this issue, a court conducts an overview of

23  the claims in the habeas petition, generally assesses their

24  merits, and determines whether the resolution was debatable among

25  jurists of reason or wrong.  Id.  It is necessary for an

26  applicant to show more than an absence of frivolity or the

27  existence of mere good faith; however, it is not necessary for an

28  applicant to show that the appeal will succeed.  Miller-El v.

1 | <u>Cockrell</u>, 537 U.S. at 338.

2 | A district court must issue or deny a certificate of
3 | appealability when it enters a final order adverse to the
4 | applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

5 | Here, it does not appear that reasonable jurists could
6 | debate whether the petition should have been resolved in a
7 | different manner.  Petitioner has not made a substantial showing
8 | of the denial of a constitutional right.

9 | Accordingly, the Court will decline to issue a certificate
10 | of appealability.

11 | VII.  <u>Disposition</u>

12 | Accordingly, it is ORDERED that:

13 | 1)  Insofar as Petitioner seeks relief from law enforcement
14 | officers with respect to the delay in a bunk change and allegedly
15 | threatening or retaliatory conduct, the petition is DISMISSED
16 | without leave to amend and without prejudice to Petitioner's
17 | right to file a civil rights action pursuant to 28 U.S.C. § 1983;
18 | and

19 | 2)  Insofar as Petitioner seeks relief for violations of
20 | state law, the petition is DISMISSED without leave to amend for
21 | failure to state claims cognizable in this proceeding; and

22 | 3)  Petitioner's claims concerning violations of due process
23 | of law are DISMISSED without leave to amend for failure to state
24 | facts entitling a petitioner to habeas corpus relief; and

25 | 4)  The Court DECLINES to issue a certificate of
26 | appealability; and

27 | 5)  The Clerk is DIRECTED to mail to Petitioner a form for
28 | filing a civil rights complaint pursuant to 42 U.S.C. § 1983 by a

1 | person in custody, and to close the action.

3 | IT IS SO ORDERED.

4 | **Dated:    January 26, 2012**                                    /s/ Sheila K. Oberto
UNITED STATES MAGISTRATE JUDGE